**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DOUGLAS NORMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:25-cv-00296** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **VANDERBILT UNIVERSITY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' motion to dismiss (Doc. No. 15), which is fully briefed. (*See* Doc. Nos. 22, 25). For the reasons stated herein, the motion is **DENIED**.

## I.    BACKGROUND[1]

At all relevant times, Plaintiff was not enrolled as a student at Vanderbilt University (Vanderbilt), a private educational and research institution located in Nashville, Tennessee. Vanderbilt's Public Safety division operates as a police department, with over 250 staff members commissioned through the Metro Nashville Police Department.

On March 26, 2024, Vanderbilt Public Safety arrested a local news reporter who had gone to Vanderbilt to cover student protests. The Public Safety officers did not offer the reporter the opportunity to leave campus, instead just taking him into custody and taking him to jail. However, when the Public Safety officers brought the reporter before the judicial commissioner and requested that trespass charges be issued against him, the commissioner declined to issue the requested criminal charges. The arrest of this reporter swiftly triggered a public outcry.

---

[1]    The facts stated herein come from Plaintiff's Complaint. (Doc. No. 1).

On April 3, 2024, Vanderbilt retained an independent law firm to investigate the reporter's arrest and to review Vanderbilt's relevant policies. The law firm conducted their investigation and developed a report. The independent law firm's report, which would be issued on May 30, 2024, made several findings. One of the findings in the report was that the Vanderbilt Public Safety officers had not given the reporter the opportunity to leave campus before arresting him. Another finding was that the Davidson County judicial commissioner found that there was lack of probable cause to support the criminal trespass charge. The report also made several recommendations, one of which was that, "Absent emergency situations or specific safety concerns, before any arrest for criminal trespass, the potential arrestee be warned and given an opportunity to leave the area." The commissioner's probable cause finding, as well as the law firm's recommendation that alleged trespassers be given the opportunity to leave, were consistent with Tennessee law's legal limitations on the crime of criminal trespass.

In August 2023, after evicting Plaintiff from campus housing, Vanderbilt Public Safety officers informed Plaintiff that he would need to contact a campus supervisor to enter campus for any purpose besides attending Vanderbilt athletic events. Plaintiff subsequently attended Vanderbilt athletic events in August and October 2023 without any issues. However, when he attended a Vanderbilt athletic event on November 14, 2023, Public Safety officers arrested him and charged him with trespassing.

On November 30, 2023, Vanderbilt sent Plaintiff a letter stating:

> If you feel you have a need to enter Vanderbilt property for any reason (other than medical treatment at Vanderbilt University Medical Center), you must first contact Vanderbilt University Public Safety at 615-322-2745. You will be put in contact with the shift supervisor, to whom you must tell the reason for your visit and where you want to go before permission may be granted.

2

On March 31, 2024, Vanderbilt's Director of Student Accountability, Jeremy Bourgoin, informed Plaintiff that Vanderbilt's access restrictions would remain in place unless and until Plaintiff was re-enrolled as a student and had completed Vanderbilt's "accountability process."

On April 16, 2024, Plaintiff called Vanderbilt Public Safety and told them he wanted to come to campus to speak with someone about an affidavit signed by a Vanderbilt Official stating that he had been expelled. Plaintiff was told the Public Safety staff were in a meeting, but that a detective could speak with him afterwards. Plaintiff then asked if he could come at 5 P.M. to speak with someone and was told they could find someone for him to talk to. Plaintiff then asked that Vanderbilt Public Safety notify a campus supervisor he was going there and to the Student Accountability office. Vanderbilt Public Safety told Plaintiff it would let the relevant parties know. Upon information and belief, Vanderbilt Public Safety relayed to the relevant parties that Plaintiff was coming to campus that evening.

Plaintiff came to Vanderbilt at around 5 p.m. and made an impromptu decision to go into the Student Affairs office. Plaintiff told an administrative assistant for the Associate Dean of Community Standards and Support that he wanted to speak to "a dean" about a paperwork issue, after which the administrative assistant told Plaintiff she understood, offered him a water, and said he could go take a seat while she went to explain things to her supervisor. When she returned after several minutes, the administrative assistant continued speaking sympathetically with Plaintiff about his paperwork issue and apologized for the same. Meanwhile, someone else in the Student Affairs office notified the Student Accountability office of Plaintiff's unannounced visit, and Director Bourgoin instructed Student Affairs to keep Plaintiff there so Vanderbilt Public Safety could arrest him. Director Bourgoin then contacted Vanderbilt Public Safety to have them arrest Plaintiff.

Upon receiving Director Bourgoin's call, Vanderbilt Public Safety dispatched Lieutenant Alan Reed to arrest Plaintiff. Reed entered Student Affairs, and confronted Plaintiff, telling him that he had been banned from campus. Plaintiff explained to Reed that he had obtained permission to come onto campus from Vanderbilt Public Safety dispatch. Reed interrogated Plaintiff about who he spoke with and Plaintiff answered his questions. During this conversation, Plaintiff contacted an attorney over the phone and put the attorney on speakerphone. The attorney told Reed that Plaintiff was under the impression that he had permission to be on campus, and asked if Reed could just give Plaintiff a warning and allow him to leave. Reed responded that per Vanderbilt Public Safety "policy," he had to take Plaintiff into custody. Plaintiff identified the dispatcher he had spoken with by name and said that he had notified them that he would be at Vanderbilt Public Safety and Student Accountability. Reed responded by reiterating that he would arrest Plaintiff. Plaintiff explained to Reed that he was not attempting to be adversarial and that he had followed the protocol that had been laid out for obtaining permission to enter campus and was in the middle of a meeting when Reed came into the Student Affairs office. Plaintiff offered to identify the Student Affairs staffer he had been speaking with, to which Reed responded by ordering Plaintiff to put his hands behind his back so that he could be handcuffed. Plaintiff asked Reed to contact Public Safety, which Reed did. Reed got on his dispatch radio, and reported "one detained." On the other end of the dispatch radio, another officer – who upon information and belief was Reed's supervisor – acknowledged without further comment that Reed had detained Plaintiff.

Reed walked Plaintiff to his patrol car and explained that he was going to take Plaintiff to book him into jail. Plaintiff's attorney, who was still on speaker phone, asked Reed what he was arresting Plaintiff for. Reed responded that he was arresting Plaintiff for criminal trespass.

Plaintiff repeated that he had followed the protocol to gain permission to enter campus and asked Reed why he could not just let him depart rather than arrest him. Reed explained that per Vanderbilt policy, "Anyone that has been issued a criminal trespass warning on this university is arrested and taken to booking." With regard to Plaintiff's repeated explanations that he had spoken with Dispatch before coming, Reed stated, "Whoever you talked to did not notify the authorities at Vanderbilt police department to let them know that you were coming back on campus." Plaintiff asked Reed if he could take him to Vanderbilt Public Safety, so that they could attempt to sort it out there. Reed disregarded the request and put Plaintiff in his patrol car. Plaintiff continued repeating that he had spoken with dispatch before coming to campus, and also informed Reed that he had the call logs on his phone. Reed could have easily confirmed with dispatch whether or not Plaintiff had called, and could even have obtained the recordings of the calls if he had wished. Instead, Reed proceeded with the arrest.

Vanderbilt Public Safety Captain C. Stevens came out to Reed's patrol car, informed Plaintiff that he was going to have to hang up the call with his attorney, and hung up Plaintiff's phone. Plaintiff asked Captain Stevens if he could speak to him regarding the arrest, but Captain Stevens ignored him. Shortly thereafter, Reed drove Plaintiff to jail.

While *en route* to jail, Plaintiff and Reed continued discussing the arrest. Reed expressed sympathy for Plaintiff regarding the fact that he had spoken with Dispatch before coming and thought he had permission. However, Reed stated that he was subject to the chain of command, intimating that he had to arrest Plaintiff because that was what he was told to do. Reed told Plaintiff that when he goes before the judicial commissioner he should bring up the information about having gotten permission before going to campus. Reed stated, "we arrest a lot of people

5

for trespass on Vanderbilt property." Reed also stated that even if the trespass is by mistake, "If they're on the campus property, they generally go to jail" because "its just Vanderbilt's policy."

Reed explained to Plaintiff that the only information he had was what his Captain had told him, which was that there were two prior warnings and Plaintiff was not supposed to be on campus. Reed further explained that the Director of Student Accountability, Director Bourgoin, had made the final decision for Plaintiff's arrest. At no point in this discussion did Reed acknowledge Tennessee's recognized affirmative defenses to criminal trespass charges.

Reed booked Plaintiff into the Davidson County jail, and then obtained a criminal trespass charge against him. To initiate the trespass charge, Reed drafted an affidavit alleging the factual basis for the trespass and presented it to the Davidson County judicial commissioner. Although Reed was aware of the fact that Plaintiff had contacted dispatch before coming to campus and had obtained permission before coming, and Reed had in fact suggested to Plaintiff that he tell the commissioner about this fact, Reed failed to disclose these facts in his affidavit. Likewise, Reed failed to disclose that he had refused Plaintiff's offer to depart campus voluntarily in lieu of arrest. Based on Reed's affidavit, the commissioner issued the requested criminal trespass misdemeanor charge. Plaintiff was released on bond a few hours after being charged. After getting out of jail, Plaintiff retained criminal defense counsel and appeared in General Sessions Court to defend himself from the trespass charge. On September 4, 2024, the General Sessions Court retired the criminal trespass charges at the request of the District Attorney's Office.

Plaintiff filed the present lawsuit against Defendants on March 13, 2025, claiming violations of his Fourth Amendment rights in violation of 42 U.S.C. § 1983. (*See* Doc. No. 1).

6

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

## III.     ANALYSIS

Plaintiff brings two claims against Defendants under 42 U.S.C. § 1983, claiming they violated his Fourth Amendment rights via false arrest (Count I) and malicious prosecution (Count II). Defendants argue the complaint fails to allege a violation of Plaintiff's Fourth Amendment rights because (1) the alleged facts establish the existence of probable cause for Plaintiff's arrest and subsequent prosecution; and (2) the complaint fails to allege facts that they each played a role in the decision to prosecute Plaintiff.

Defendants are correct that a plaintiff must allege facts showing that the arresting officer lacked probable cause to arrest the plaintiff to plausibly allege a Fourth Amendment false-arrest claim in an action brought under Section 1983. *See Alford v. Deffendoll*, 165 F.4th 490, 496 (6th

7

Cir. 2026). And Defendants are also correct that a plaintiff must allege facts showing, among other things, that each defendant made, influenced, or participated in the decision to prosecute to plausibly allege a violation of his Fourth Amendment rights via malicious prosecution. *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). However, accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the complaint includes enough facts to clear the low bar of plausibility for his claims.[2] Whether these factual allegations hold up when tested will be a determination made a later time.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss (Doc. No. 15) is **DENIED**.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[2]    Although Defendants initially raised qualified immunity, they appear to have abandoned it at this stage in the face of Plaintiff's response. (*See* Reply, Doc. No. 25).